UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANITA PETERSON,

    Plaintiff,                                    Case No. 1:19-CV-492

v.                                                 HON. GORDON J. QUIST

KNOLL, INC.,

    Defendant.
_____/

**OPINION GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiff, Anita Peterson, filed a *pro se* complaint against her former employer, Knoll, Inc.,[1] alleging race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and disability discrimination under the American with Disabilities Act, 42 U.S.C. § 12182 *et seq*. (ADA). Knoll has filed a Motion for Summary Judgement and for Dismissal for Failure to State Claim for Which Relief May Be Granted. (ECF No. 13.) For the reasons stated below, the Court will grant Knoll's motion and dismiss this case.

---

[1] Peterson may have also intended to name her former supervisor, Brian VanTimmeran, as a Defendant in this matter because VanTimmeran is listed in the caption of her Complaint. However, the proposed summons provided by Peterson did not list VanTimmeran as a Defendant and VanTimmeran has not been served with a copy of the Complaint. Therefore, the Court does not consider VanTimmeran to be a Defendant in this case. Even if the Court considered VanTimmeran as a Defendant, the Court would dismiss the claims against him for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because Peterson does not make any allegation against VanTimmeran in her Complaint.

# I. BACKGROUND

## A. Complaint

Peterson's complaint is quite brief. The entire complaint provides:

```
1) Discrimination based on Race and Disibility.

2) The courts jurisidiction in the matter pertaining
   to the Americans with Disibilities Act and Title V11
   the Civil Rights Act of 1964 (Title V11).

3) I spent twenty five years of my life with this company.
   In the last few months of my employment with Knoll I
   was constantly asked to do jobs that were outside of my
   restrictions, which lead to continuous harassement and
   simultaneous write ups. No one has ever received
   simultaneous write ups in the twenty five years I was
   employed at Knoll but myself.  This was discriminatory
   and blatant, I received a reprimand for going to Human
   Resources to turn in FMLA paperwork, calling it insubordination.

4) I am seeking damages for loss of incime, mental anguish
   loss of health, dental and vision insurance.  loss of
   bonus, 401k match as well as stocks and bonds.

5) Seeking $750,000 for financial and emotional distress
   plus punitive damages.
```

(ECF No. 1.)

The Court interprets Peterson's complaint as raising claims of race discrimination and disability discrimination.

## B. Knoll's Dispositive Motion

In its dispositive motion, Knoll adds additional facts and background to the case. Knoll is an office furniture manufacturing company. Prior to her termination, Peterson worked as a fabric cutter at the plant in Kentwood, Michigan. Because she was considered a production employee, Peterson was a member of the bargaining unit represented by Carpenters Local 1615.  Knoll and

Local 1615 are parties to a Collective Bargaining Agreement that authorizes Knoll to establish rules of conduct.

Peterson started to have issues with her job performance beginning in June 2017. On June 28, 2017, a supervisor issued Peterson a "written verbal" warning for being away from her work area for significant periods of time on two separate dates. (ECF No. 13-1 at PageID.78.) On October 27, 2017, a supervisor issued Peterson a written warning for insubordination. According to the written violation, "[Peterson] wanted to go out and move her car during working time. I told her she could do so during her break. She was not happy with my decision. [Peterson] went out to the shop floor then came back in the front and said she was going home and walked out." (*Id.* at PageID.79.) On November 29, 2017, a supervisor suspended Peterson for three days for "producing defective work through carelessness or negligence." (*Id.* at PageID.79.) According to the written violation, Peterson improperly cut 488 pieces of fabric and all of the fabric had to be scrapped. On December 11, 2017, a supervisor suspended Peterson for another three days because she was absent from her work area without permission.

Peterson received three more write-ups in March 2018, which ultimately led to her termination on March 19, 2018. The three write-ups were written on the same date for three incidents that occurred the week prior. On March 12, 2018, Peterson cut fewer than twelve pieces of fabric in an eight-hour shift. On March 13, 2018, Peterson did not follow a supervisor's directive to "cut shortages as priority." (*Id.* at PageID.82.) On the same date, Peterson was away from her work area without permission.

Following her termination, Local 1615 filed a grievance on Peterson's behalf. A neutral arbiter subsequently held a hearing on the grievance. During the hearing, Peterson did not dispute any of her misconduct.

### C. Peterson's Response/Sur-Reply

In her response, Peterson submitted an email "disputing" Knoll's "denial of discrimination based on race and disability." (ECF No. 15 at PageID.108.) The email was sent from pres1615@aol.com on July 2, 2018. In the email, the sender writes: "I believe [Peterson] has received more attention that [sic] most at Knoll. For years she was one of a very few black persons working there. As I stated at a grievance meeting, wether [sic] it is her color or her height, [Peterson's] actions did not go unnoticed." (ECF No. 15-1 at PageID.111.) The sender continues to describe some of the write-ups that Peterson received. At one point, the sender states that Peterson received a write-up for being outside without permission. A white male was also outside and received a write-up, but the write-up was later rescinded. The sender also describes an event where white males also received write-ups that were not rescinded. The sender opines that "to my knowledge, no one else was disciplined using separate papers at the same time." (*Id.*)

Knoll filed a reply, arguing that the email should not be considered because it is not sworn or authenticated and the statements in the email are hearsay and not admissible at trial. Peterson subsequently filed a sur-reply, in which she appears to claim that she intends to call the Local 1615 President, Michael Gunneson, as an expert witness at trial. Peterson also suggests that the email is part of Mr. Gunneson's expert report. The email remains unauthenticated, unsworn, and unsigned. Even if Mr. Gunneson wrote the email, the email contains hearsay and would not be admissible at trial. Nonetheless, taking into consideration that Ms. Peterson is proceeding pro se, the Court will discuss some of these statements in its Analysis.

## II. LEGAL STANDARD

Knoll filed its motion pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(c), and 56. Knoll cannot move for dismissal under Federal Rule of Civil Procedure 12(b)(6) because it has

already filed a responsive pleading. *See* Fed. R. Civ. P. 12(b); *Fite v. Comtide Nashville, LLC*, 686 F. Supp. 2d 735, 747 (M.D. Tenn. 2010). A party may move for judgment on the pleading under Federal Rule of Civil Procedure 12(c) after filing a responsive pleading. However, in the instant case, Knoll has submitted additional evidence that is not part of the pleadings; therefore, the Court will analyze Knoll's motion as one for summary judgment under Federal Rule of Civil Procedure 56.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813–14 (6th Cir. 2006).

### III. ANALYSIS

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)." Similarly, "[t]he ADA prohibits an employer from 'discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 297 (6th Cir. 2019) (quoting 42 U.S.C. § 12112(a)).

A plaintiff may prove discrimination by direct evidence or use indirect evidence. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020). Direct evidence does not require the fact finder to draw any inference. *Morrissey,* 946 F.3d at 298. "Indirect or circumstantial evidence 'allow[s] a factfinder to draw a reasonable inference that discrimination occurred.'" *Willard*, 952 F.3d at 807 (quoting *Geiger v. Tower Auto*., 579 F.3d 614, 620 (6th Cir. 2009)).

If a plaintiff uses indirect evidence, the Court must apply the three-part burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). "To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case of discrimination by a preponderance of the evidence." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019). "Once the plaintiff makes out a prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for' the adverse employment action." *Id.* at 607 (citation omitted). "Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination." *Id.*

The *McDonnell Douglas* framework applies to discrimination claims under Title VII and the ADA. *See Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 297 (6th Cir. 2019); *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006). Because Peterson did not submit any direct evidence, the Court will apply the *McDonnell Douglas* framework on each claim below.

### A. Race Discrimination

To establish a prima facie case of racial discrimination, Peterson must show: (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly situated employees outside of her protected class. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).

Based on the allegations in the Complaint, Peterson failed to establish a prima facie case of racial discrimination. Although Peterson alleged "Discrimination based on Race," she did not allege that she was member of a protected class. Nor did she allege that she was terminated from her position or that she was treated differently than similarly situated employees outside of her protected class.

The Court *will* proceed with undisputed facts alleged by Knoll that comes from Knoll's summary judgment motion. The Court now knows that Peterson is African American and that Knoll terminated Peterson in March 2018. Even considering these new facts and construing the Complaint liberally, Peterson has failed to show that she was treated differently than similarly situated employees outside of her protected class. Peterson takes issue with the fact that she received three simultaneous write-ups which led to her termination. She does not allege that the simultaneous write-ups had anything to do with her race. Instead, she argues that "no one has ever received simultaneous write ups in the twenty-five years I was employed at Knoll but myself."

(ECF No. 1 at PageID.2.)[2] And even if the Court were to consider the allegations in the email—which it does not—the statements are inconsistent and show that white males often received write-ups and warnings at the same time as Peterson. Therefore, the Court finds that Knoll is entitled to judgment as a matter of law on Peterson's race discrimination claim.

### B. Disability Discrimination

To establish a prima facie case of disability discrimination, Peterson must show that (1) she is disabled or her employer regarded her as disabled, (2) she is qualified to perform the essential functions of a position, and (3) she suffered an adverse employment action because of his disability. *Wallace v. Edward W. Sparrow Hosp Assn*, 782 F. App'x 395, 404 (6th Cir. 2019) (citing *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014)). An individual is considered "disabled" under the ADA if she "has a physical or mental impairment that substantially limits one or more of the major life activities of such individual," or if she "is regarded by [the] employer as having such an impairment." *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008) (quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999)).

Peterson has not provided any evidence of a disability or that Knoll took any action against her because of the disability. In her Complaint, Peterson states that she has a "dis[a]bility" and that she "was constantly asked to do jobs that were outside of [her] restrictions." (ECF No. 1 at PageID.2.) The Court does not know what her disability is or how it restricts her.[3] And, even if the Court were to consider the email as admissible evidence, the statements in the email are too

---

[2] Furthermore, Knoll has provided evidence that at least three other employees have received simultaneous write-ups. As recently as April 17, 2019, an employee received simultaneous write-ups.

[3] Knoll submitted a 2010 letter in which Peterson states that she has vertigo. It is unclear if this medical condition has any relevance to this case because, in the letter, Peterson identifies fabric cutting as a position that fully accommodates her medical condition.

vague to ascertain whether Peterson is disabled. The Court can only hypothesize that Peterson's alleged disability has something to do with her height. (*See* ECF No. 17-1 at PageID.130) ("whether it is her color or her height"). Peterson's conclusory statement in her Complaint and the vague assertions in the email—without more—are insufficient to make the requisite showing that she is disabled under the ADA. Furthermore, Peterson has not made any allegation that Knoll took any adverse action against her because of her alleged disability. Therefore, Peterson's ADA claim must be dismissed.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgement and for Dismissal for Failure to State Claim (ECF No. 13) will be granted.

A separate order will follow.


Dated: August 17, 2020                             /s/ Gordon J. Quist
                                                  GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE